[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFFS' MOTION TO SET ASIDE VERDICTAND FOR ADDITUR.
The defendant, Bessemer Trust Company, pursuant to § 320, et seq., of the Practice Book, has filed a motion to set aside the jury verdict in this action. The defendant requests that the court direct the entry of judgment for the defendant or, in the alternative, order a new trial.
The following facts are found:
Evidence in this case commenced before a jury on February 16, 1996 on the plaintiffs' four count amended complaint. In their case in chief, the plaintiffs called the following witnesses: Richard Marshall, Catarine Milinaire and Reto Morosani, plaintiffs; Angelo Campanile and Austin Power, officers of the defendant Bessemer Trust, Milton P. DeVane, a co-executor of the estate, and John Fahey, Thomas Kendall and Ralph Dupont.
At the close of the plaintiffs' case in chief, on February 27, 1996, the defendant moved for a directed verdict on all four counts and submitted a memorandum in support thereof. The court, (Pickett, J.) at that time granted the defendant's motion for a directed verdict as to count four and reserved decision as to the first three counts. The first three counts all alleged a breach of duty by the defendant, as executor, regarding the sale of certain property in the Barbara Mortimer estate known as Normandy Farm.
The defendant then introduced the testimony of Margaret Roraback, Barbara Schaffel, Carolyn Klemm and Sue Doyle. It also CT Page 2192 recalled witnesses Austin Power and Milton DeVane regarding damage issues only. The plaintiffs offered no rebuttal testimony.
The jury returned a verdict on March 1, 1996 for the plaintiff Richard Marshall in the amount of $52,977.78 and for each of the other four plaintiffs in the amount of $13,244.44 each. The defendant has moved that the jury verdict be set aside and that the court direct the entry of judgment for the defendant or, in the alternative, order a new trial.
Pursuant to Practice Book § 321,[1] the court is permitted to set aside the jury verdict and render judgment in accordance with the defendant's motion for a directed verdict. In the alternative, pursuant to the same Practice Book section, if the court decides not to direct the entry of judgment for the defendant, a new trial may be ordered.
Pursuant to Section 321 of the Practice Book, whenever a motion for a directed verdict made at any time after the close of the plaintiff's case in chief is for any reason not granted, the party who has moved for a directed verdict may move to have the jury verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with the defendant's motion for a directed verdict. The defendant does not lose this right by introducing testimony of its own. A directed verdict should be granted to the defendant based upon the evidence or lack thereof, produced by the plaintiffs in their case in chief, if the jury could not reasonably and legally reach a conclusion other than in the defendant's favor. Krause v. Bridgeport Hospital, 169 Conn. 1,3 (1975). A party moving for a directed verdict "is entitled to have such a motion decided upon the basis of the evidence that has been presented at the time of the motion." Wood v.Bridgeport, 216 Conn. 604, 607; Kelly v. Bonney, 221 Conn. 549,563.
In the defendant's motion for directed verdict filed February 27, 1996, as to the first three counts of the amended complaint, the defendant argued that the jury could not reasonably and legally determine the issues for the plaintiffs because (1) plaintiffs failed to provide sufficient evidence of damages; and (2) based upon the evidence produced, the jury could not reasonably and legally determine that the defendant breached any duty owing to plaintiffs.
I
CT Page 2193
For plaintiffs to prevail in a civil action for money damages, it is as essential that plaintiffs introduce evidence to support damages as it is to produce evidence to support liability.
In the recent Connecticut Supreme Court decision inExpressway Associates II v. Friendly Ice Cream Corporation ofConnecticut, 218 Conn. 474, 476-477 (1991), the court stated:
 It is axiomatic that the burden of proving damages is on the party claiming them. [citations omitted] When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. [citations omitted, emphasis added] Damages "are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." [citations omitted]
Damages are an essential element of a plaintiff's proof and must be proved with reasonable certainty. Preston v. Keith,217 Conn. 12, 20 (1991). The jury must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount. Griffin v. Nationwide Moving and Storage Co., Inc.,187 Conn. 405 (1982). Damages must be based on evidence, Slattery v. Maykut, 176 Conn. 147 (1978).
The plaintiffs in this action are some, but not all, of the residual beneficiaries under the will of Barbara Mortimer. As such, under Article IX of her will, they are to receive the "rest, residue and remainder" of Mrs. Mortimer's estate in certain proportions. In order to recover money damages, the plaintiffs are required to provide proof of what additional residue of the estate they allegedly lost because of the claim that Normandy Farm should have sold for more. The plaintiffs presented no evidence regarding what additional residue of the estate they allegedly lost.
The residual beneficiaries under Article IX of the will received the "rest, residue and remainder" of Mrs. Mortimer's estate in certain proportions. The plaintiffs had to provide proof of what additional residue of the estate they allegedly lost because of the claim that Normandy Farm should have sold for more. Simply selling the property for more does not prove what CT Page 2194 the additional residue of the estate would be. First, estate and succession taxes would have had to be paid out of the estate for any increased amounts in the estate. See Article XII of the will. Additional expenses may well have been incurred by the estate in selling the property as the plaintiffs desired, including a brokerage fee, additional taxes and upkeep on the property, conveyance taxes and the like. Depending upon the timing of the sale, there may have been less income earned on the sale proceeds than was able to be realized by the sale which took place at the time it did.
The plaintiffs failed to introduce in their case in chief sufficient evidence on their damage claim, which is an essential element of their proof. For the jury to award damages based upon the evidence introduced would be nothing more than rank speculation, which is not permitted.
The defendants, in their case, did introduce evidence establishing that any increase in the sale price would be subject to a variety of factors before it could be determined whether plaintiffs suffered any damages at all, or if so, how much.
These factors included the date on which Normandy Farm would have reasonably sold, deductions from any gross increased sale price for brokerage fees, conveyance taxes, "fix-up" costs and additional carrying expenses. That number would be further reduced by 60% for federal estate and state succession taxes. That number would be further reduced for loss of income to the estate from a sale later than the date the sale actually occurred.
Although the plaintiffs had ample opportunity to provide such evidence, they failed to do so. They called as witnesses in their case Campanile and Power, officers of Bessemer, and the co-executor DeVane. These persons were well qualified to testify regarding the various factors which would go into any damage calculation, but plaintiffs chose not to elicit such testimony. Power and DeVane testified as part of the defense case regarding these issues. The plaintiffs were also free to put on other witnesses of their choosing as to these issues.
Although failure to understand the legal issues would not be an excuse for failing to put on this evidence, the plaintiffs cannot argue "surprise". In the defendant's motion to strike, dated October 17, 1994, the defendant raised the fact that any CT Page 2195 damages which the plaintiffs might suffer were clearly not the same as what any increased sale price might be. In the court's memorandum of decision re: the motion to strike, dated April 18, 1995, in ruling on the damages issue, the Court, (Pickett, J.) stated that it was relevant: "whether the plaintiffs did in fact suffer damages or to the amount of damages suffered and the plaintiffs must overcome their burden of proving monetary damages."[2] In addition, the defendant's memorandum in support of their motion for a directed verdict filed February 27, 1996, clearly set forth their legal claims regarding damages.
The jury must have evidence by which it can calculate damages, which evidence is not merely subjective or speculative, but which allows for some objective ascertainment of the amount.Bronson Townsend Co. v. Battistoni, 167 Conn. 321, 326-327
(1974). For the jury to attempt to calculate damages based only on evidence of a potential increased sale price of Normandy Farm would permit the jury to determine damages on a merely subjective or speculative basis.
In fact, after the introduction of testimony in the defendant's case, the damages awarded were only 21.2% of the additional sale price of $500,000 found by the jury. Obviously, had the jury attempted to award damages based solely on evidence submitted in the plaintiffs' case, the award would have been subjective and speculative.
The plaintiffs have objected to this court's charge on how damages were to be calculated. However, that does not change the fact that the court's determination on that legal issue was solely the court's to make. The plaintiffs took the risk of not putting on adequate evidence of damages, in the hope that they could obtain a verdict providing a damage award that bore no relationship to actual damages suffered. However, the plaintiffs were incorrect, in the court's opinion, as to the legal measure of damages; and they failed to sustain their burden of proving damages, an essential element in the plaintiffs' case.
 II
The first three counts of the amended complaint all allege that the defendant breached a duty of care owing to the plaintiffs in the manner in which Bessemer sold Normandy Farm.
Under Article XIV of the will, Bessemer had the "power to CT Page 2196 sell . . . or in any other manner dispose of any part of the estate, real or personal, upon such terms and conditions as to them shall seem best". This direction in the will gave Bessemer broad discretion and the grant of that discretion is proper under Connecticut law. See Solomon v. Wixon, 27 Conn. 520, 527 (1858);Carr v. Huber, 18 Conn. App. 150 (1989).
Furthermore, under Connecticut law, Bessemer's determination of how best to sell Normandy Farm can be called into question only if Bessemer abused its discretion. Gimbel v. GimbelFoundation. Inc., 166 Conn. 21, 36 (1974); Bridgeport v. Reilly,133 Conn. 31, 37 (1946) (a fiduciary's exercise of discretionary powers "is subject to the control of the court to the extent, andonly to the extent, that there has been an abuse of it." (Emphasis added)); McCarthy v. Tierney, 116 Conn. 588, 591-93
(1933). In McCarthy, supra. 116 Conn. 592, it was particularly noted that in cases where fiduciaries were selected by the testator himself, it was particularly important that the judgment of the court not be substituted for the decision of the fiduciary.
In determining whether there has been an abuse of discretion, the ultimate issue for the trier of fact is whether the person exercising the discretion, in this case Bessemer, could reasonably conclude as it did. See Timm v. Timm, 195 Conn. 202,207 (1985).
Furthermore, pursuant to Connecticut statutory law, it is appropriate for a testator to provide broad discretion in a will, as was done in this case, which discretion would allow the executor "[t]o sell . . . or otherwise dispose of any property or interest therein; to do any such acts without an order of any court, at public or private sale or otherwise, upon such terms and conditions, including credit, and for such consideration as the fiduciary shall deem advisable[.] . . ." (Emphasis added.) Conn. Gen. Stat. § 45a-234 (2).
There were two basic decisions which Bessemer, along with the co-executor, made in regard to the sale of Normandy Farm. First, should a sale be made to the Schaffels for $1.5 million or should that offer be rejected and the property be put on the "open market". Second, after a contract of sale had been signed with the Schaffels, should the executors breach that contract to sell to Kendall for $2 million. CT Page 2197
As to the second point, it was clearly not an abuse of discretion for Bessemer to determine to go forward under its sale contract with the Schaffels and not breach the contract to attempt to sell to Kendall. Furthermore, in the jury answers to interrogatories, the jury clearly determined that issue in favor of the defendant as well. This is based upon the fact that the jury determined that Normandy Farm would not reasonably have sold for six months after November 23, 1993. If the jury felt that Bessemer should have sold to Kendall, the evidence would suggest that the jury would have found such a sale would have occurred by December 1, 1993.
Thus, the question for this court to determine is could the jury reasonably and legally conclude, based upon the evidence introduced by the plaintiffs in their case in chief, that Bessemer could not reasonably decide to sell Normandy Farm to the Schaffels for $1.5 million rather than place it on the open market. From the evidence presented, the jury could not reasonably and legally come to this conclusion.
As to the second point, it was clearly not an abuse of discretion for Bessemer to determine to go forward under its sale contract with the Schaffels and not breach the contract to attempt to sell to Kendall. Furthermore, in the jury answers to interrogatories, the jury determined that issue in favor of the defendant. This is based upon the fact that the jury determined that Normandy Farm would not reasonably have sold for six months after November 23, 1993. Had the jury accepted the argument that Bessemer should have sold to Kendall, the evidence would suggest that the jury would have found such a sale would have occurred by December 1, 1993.
Thus the question for this court to determine is: could the jury reasonably and legally conclude, based upon the evidence introduced by the plaintiffs in their case in chief, that Bessemer could not reasonably decide to sell Normandy Farm to the Schaffels for $1.5 million rather than place it on the open market.
Evidence introduced by the plaintiffs, in their case in chief, from Campanile and Power, officers of Bessemer and Mr. DeVane, co-executor, established the following: The evidence indicated that Bessemer considered a variety of factors in making the determination that it seemed best to sell Normandy Farm for 1.5 million to the Schaffels based upon a quick closing, no CT Page 2198 contingencies and an all cash deal. The testimony established that Bessemer considered the following factors:
(1) The appraiser who had appraised the property for $1.8 million opined that his appraised value should be decreased by 10% for a quick, clean sale such as the one to the Schaffels.
(2) Sue Doyle, the real estate broker who would have had the listing for the estate for an open market sale advised Bessemer to sell to the Schaffels, and in so doing, worked against her own financial interest by giving up a substantial brokerage fee.
(3) Bessemer considered the expenses to be incurred should the property be put on the open market, which expenses could be avoided through the sale to the Schaffels.
(4) Bessemer considered the anticipated length of time the property would remain on the open market and the substantial carrying costs to the estate until such a sale could be consummated.
(5) Bessemer considered the land values for large acreage lots at that time and the likely per acreage price which Normandy Farm would obtain.
(6) Bessemer considered the physical condition of the buildings on the property, which it considered to be very poor.
There was no evidence introduced that these considerations were improper or that the conclusions drawn by Bessemer were not reasonable.
The plaintiffs claimed in their complaint that Bessemer engaged in self-dealing with Arthur Diedrick; however, there was no evidence of that fact and the court charged the jury not to consider any such claims.
Other witnesses called by the plaintiffs included three plaintiffs: Richard Marshall, Catarine Milinaire and Reto Morosani. None of them produced any evidence contrary to the fact that Bessemer had made reasonable considerations in determining whether to sell to the Schaffels rather than put the property on the open market.
John Fahey, a real estate expert, testified for the CT Page 2199 plaintiffs, but he provided no testimony that a private sale to the Schaffels was not reasonable or that Bessemer did not reasonably consider relevant factors in making its determination not to go on the "open market".
Ralph Dupont, an alleged expert, did testify that in a general fiduciary situation, a fiduciary should put the property on the "open market". His testimony, however, did not deal with the specific situation present here, i.e., broad discretion given to Bessemer to sell the property as it felt best. Dupont's testimony therefore did not contradict facts established through the other witnesses.
The factual issue for the jury to determine was very simply whether Bessemer abused the broad discretion given it under the will in the sale to the Schaffels. The jury could have reasonably found for the plaintiffs only if the law provided that an executor must always place real property on the open market. This is contrary to well established Connecticut statutory and common law. For the plaintiffs to be able to succeed on liability on the evidence which they produced would mean that no executor could proceed to sell real estate privately, even given the broad powers of discretion provided in the Mortimer will, without breaching a fiduciary duty. This is not the legal standard in Connecticut.
 III
The plaintiffs have acknowledged, for the first time in the motion for additur, that damages are not the difference in any increased sale price, but damages must take into account what amount of any increased sale price would actually have been paid to the residual beneficiaries.
The plaintiffs claim that their total damages "should be $373,000, namely $500,00 less costs of $127,000.00". The plaintiffs thus acknowledge that certain items, brokerage fee, increased conveyance taxes, "fix-up" costs and additional carrying expenses, which the jury found to total $127,000.00, should be deducted from any increased sale price.
The plaintiffs refuse to acknowledge that the amount for federal estate and state succession taxes ($223,800) and lost income to the estate had the property not been sold earlier, ($30,000), should not be deducted. At the close of the CT Page 2200 plaintiffs' case in chief, the defendant moved for a directed verdict, partially on the grounds that the plaintiffs had not produced evidence of their damages. The plaintiffs acknowledge that they did not put on evidence regarding the deductions which they now agree were appropriate. Furthermore, because the court reserved decision on the directed verdict motion, the defendant also put on testimony regarding the effect of "death taxes" on any increased sale price and on the amount of lost income to the estate from a later sale of the property. No contrary evidence was produced and the jury quite properly deducted amounts for these items from the gross increased sales price.
In their brief in support of a motion for additur, the plaintiffs cite Rippey v. Denver United States Nat'l Bank,273 F. Sup. 718 (D.Colo. 1967) and certain sections from Scott on Trust
[sic]. None of these cites support the plaintiffs' position.
In addition to being a case decided under Colorado law,Rippey involved a trust, not an estate, and the question was whether trustees had sold certain stock for less money than they should have received. Furthermore, Rippey offers no discussion on the damage theory in dispute between parties in this case. The plaintiffs' citation to Rippey is irrelevant.
In citing Scott on Trust, the court believes that the plaintiffs are referring to Austin W. Scott, The Law of Trusts
(4th Ed. 1988). The five sections from Scott referenced by plaintiff in their brief are irrelevant; however, plaintiffs fail to cite Section 205 from Scott, The Law of Trusts, at 239-240, which is relevant and supports the defendant's position in this case. That section states :"[I]f a breach of trust results in the failure to make a gain that would otherwise have accrued to the trust estate . . . the beneficiaries are entitled to be put inthe position that they would have occupied if no breach of trusthad been committed." (Emphasis added.)
That is exactly the position which the defendant has asserted. If the defendant is liable, the plaintiffs' residual beneficiaries are entitled to be put in the position that they would have occupied if there had been no breach of duty. The plaintiffs are not entitled to a windfall.
The sections cited by the plaintiffs from Scott are irrelevant. Section 109.6 deals with the manner of sale and has nothing to do with calculating damages. Section 206 relates to CT Page 2201 liability for breach of duty of loyalty, and as this court has already charged, there was no evidence of lack of loyalty or self dealing in this case. Section 208 deals with liability for selling trust property that a trustee has a duty to retain. Again, that has no relevance in this case. Section 212 deals with violations of more than one of the duties specified in Sections 208-211 and is irrelevant to this case. Section 214 deals with the issue of several beneficiaries, and it again is irrelevant to the dispute about the calculation of damages.
The defendant's motion for a directed verdict is granted; therefore the plaintiffs' motion to set aside the verdict and/or order an additur is denied.
Practice Book Section 321 provides in part that "if a verdict was returned the court may . . . set the verdict aside and either order a new trial or direct the entry of judgment as if the respective verdict had been directed." As stated in Robinson v.Southern New England Telephone Co., 140 Conn. 414, 421:
 . . . .The rule vests in the court a legal discretion in the matter. This discretion should be exercised in favor of an order for a new trial if circumstances for which a party is not at fault have resulted in his failure to present the evidence
which is lacking in his case and it appears that the necessary evidence will in reasonable probability be available on a retrial. Typical circumstances which would justify the ordering of a new trial rather than the entry of judgment notwithstanding the verdict would be the unforeseen failure of a witness to appear or to testify as the party might reasonably have expected him to, or some erroneous ruling on the trial which excluded the essential evidence. (Emphasis added.)
In this case, the failure to present the evidence was solely the fault of the plaintiffs' attorney, and therefore, the ordering of a new trial would be an abuse of discretion and therefore is rejected.
For the reasons stated, the defendants' motion for a directed verdict on which decision had been reserved at the conclusion of the plaintiffs' case is granted and the entry of judgment for the defendant is ordered. CT Page 2202
PICKETT, J.