[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from an order and decree of the Greenwich Probate Court denying the appellant-trustee's application to terminate a testamentary trust and disallowing the trustee's proposed distribution of the trust's assets. After trial, briefs were submitted by the appellant-trustee, George Molinari (hereinafter, the trustee), and the appellee, Attorney Jevara K. Hennessey, the guardian ad litem (hereinafter, the guardian) for unborn and undetermined persons having an interest in the trust.
The central issue is whether the trustee has the discretion to terminate a trust known as The Frank and Nancy Molinari Trust, established under the Last Will and Testament of Paul Molinari. The court concludes that under the circumstances established at trial he does not. Accordingly, the trustee's appeal is denied and the decision of the Greenwich Probate Court is affirmed. Before turning to the facts it might be helpful to discuss briefly some applicable legal principles. In any appeal from probate, the Superior Court exercises a limited statutory jurisdiction and has no greater powers than the Probate Court. Berkeleyv. Berkeley, 152 Conn. 398, 400, 207 A.2d 579 (1965); see also General Statutes § 45a-186. The trial of an appeal from probate in the Superior Court is not an ordinary civil action, but is a trial de novo.Kerin v. Stangle, 209 Conn. 260, 263-64, 550 A.2d 1069 (1988); Prince v.Sheffield, 158 Conn. 286, 294, 259 A.2d 621 (1969). "When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In probate appeals, a Superior Court may admit any evidence that was received by the Probate Court or could have been received by it . . . [but] may not receive evidence that the Probate Court could not have received because it came into existence subsequent to the Probate Court hearing." (Citations omitted; internal quotation marks omitted.) In Re Michaela LeeCT Page 14142R., 253 Conn. 570, 607 n. 10, 756 A.2d 214 (2000). Thus, "[t]he function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de novo. . . . Thereafter, upon consideration of all evidence presented on the appeal which would have been admissible in the probate court, the Superior Court should exercise the same power of judgment which the probate court possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the probate court." (Citations omitted; internal quotation marks omitted.) Kerin v. Stangle, supra, 209 Conn. 264; State v. Gordon, 45 Conn. App. 490, 494-95,696 A.2d 1034, cert. granted, 243 Conn. 911, 701 A.2d 336 (1997).
The evidence at trial revealed the following pertinent facts. Paul F. Molinari, the testator, died in April of 1991, and his will dated May 2, 1990, was admitted to probate by the Greenwich Probate Court. Article seventh of the will established a trust[1] "for the benefit of [the testator's] nieces and nephews and their descendants," and named George Molinari, the testator's nephew and the appellant herein, as trustee of the trust. (Trial Exh. A, Will: art. seventh.) The testator was survived by nine nieces and nephews and several of their descendants. In establishing the trust, the testator's express "primary intention [was] to help provide for the education of [his] nieces and nephews and their descendants." (Trial Exh. A, Will: art. seventh, ¶ A.) Consonant with the testator's primary intention, the trust empowers the trustee to "use both net income and principal in disproportionate amounts to provide for higher education, including graduate education, for any beneficiary during the term of the trust." (Trial Exh. A, Will: art. seventh, ¶ C.)
Pursuant to its terms, the trust may endure for a period as long as twenty-one years after the death of the of the issue of the testator's brothers and sisters alive at the testator's death. (Trial Exh. A, Will: art. seventh, ¶ D.) Nonetheless, the trust confers upon the trustee a power to terminate the trust and to distribute the principal and income thereof to the issue of the testator's siblings, per stirpes. (Trial Exh. A, Will: art. seventh, ¶ D.) Consequently, if the trust is terminated, the trustee, as the testator's nephew, is presently one of nine proposed beneficiaries of the distributed principal and income of the trust.[2] (Trial Exh. G, Account.)
In October of 1997, prior to funding the trust, the trustee, acting in his capacity as executor of the will,[3] contacted certain potential beneficiaries of the trust who exhibited no interest in utilizing trust funds to continue their educations. He then requested permission from the Probate Court to terminate the trust. (Trial Exh. D.) By decree dated November 17, 1997, the Probate Court denied the trustee's request. (Trial CT Page 14143 Exh. E.) The trust thereafter was funded on or about March 10, 1998, with a corpus of approximately $147,328.50. (Trial Exh. C, Schedule B-2). Shortly thereafter, the trustee sent letters to twenty potential beneficiaries of the trust[4] on three separate occasions. These letters, dated September 28, 1998, June 2, 1999, and June 5, 2000, respectively, included information concerning the trust's existence, the possibility that the trust could be terminated and the funds distributed, and that requests could be made for educational assistance from the trust. (Trial Exh.'s H; I; J.) Each time that the trustee sent these twenty letters, however, there were at least fourteen other living potential beneficiaries of the trust. (Trial Exh.'s 1; 2.) The trustee's letters were not sent to an inclusive group of beneficiaries apparently because he did not know the addresses of some of the beneficiaries.[5]
None of the potential beneficiaries contacted by the trustee by mail indicated that they wished to avail themselves of the trust's funds for educational purposes. Consequently, the trustee filed an application with the Probate Court and again proposed that the trust be terminated and the funds distributed in accordance with the trustee's account dated August 14, 2000.[6] (Trial Exh. G, Account.)
The Probate Court, Tobin, J., appointed Attorney Jevara K. Hennessey, the appellee herein, as guardian ad litem (guardian) for the unborn and undetermined persons having an interest in the trust. Thereafter, the guardian rendered a report, in which she concluded that early termination of the trust would frustrate the testator's intent and therefore, the trustee's accounting showing distribution of the entire corpus of the trust should be rejected. (Trial Exh. K, Report.) In her report, the guardian points out that there is a large class of potential beneficiaries and that the availability of the trust's funds could have a significant positive effect in their lives. (Trial Exh. K, Report.)
After a hearing, the Probate Court, disallowed the trustee's account, denied the trustee's application for termination of the trust, issued orders and decrees relating to the trust and granted the trustee's motion for appeal. Subsequently, the trustee filed his statement of reasons for appeal. The trustee claims that the order and decree of the Probate Court was in error in that: (1) the decision of whether to continue or terminate this trust was left by the testator to the discretion of the trustee, as more fully apparent in article seventh, subparagraph D of the will; and (2) the trustee's decision to terminate the trust is not unreasonable in view of the cost of maintaining the trust, the limited income realized by the trust and the fact that there appear to be no persons within the class of trust beneficiaries who desire to avail themselves of the educational benefit offered by the trust. This court will address each of these reasons seriatim. CT Page 14144
First, the trustee claims that the decision of whether to continue or terminate the trust was left by the testator to the discretion of the trustee. In support of his claim, the trustee relies on the phrase "sole discretion" contained in article seventh, subparagraph D of the will[7]
and argues that this provision demonstrates the testator's intent to confer the broadest discretion possible upon the trustee. In response, the guardian argues that the trustee's power to terminate the trust is not unlimited as it must be evaluated in light of external circumstances and other provisions of the will.
It is well settled that in determining the discretionary powers conferred upon a trustee under a testamentary trust, "the expressed intent of the testator must control. This intent is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the testator when the instrument was executed, including the condition of his estate, his relations to his family and beneficiaries and their situation and condition. " Gimbel v. Bernard F. Alva B. GimbelFoundation, Inc., 166 Conn. 21, 26, 347 A.2d 81 (1974); accord Ahern v.Thomas, 248 Conn. 708, 728, 733 A.2d 756 (1999); Kolodney v. Kolodney,6 Conn. App. 118, 122, 503 A.2d 625 (1986). "In any particular case the determining consideration is the intent of the testator as expressed in the will when read in the light of any relevant circumstances."Auchincloss v. City Farmers Trust Co., 136 Conn. 266, 271, 70 A.2d 105
(1949).
"Although the use of the term `sole discretion' confers a wide discretion, no language in a trust will be so construed as to remove a trustee from equitable control." Gimbel v. Bernard F. Alva B. GimbelFoundation, Inc., supra, 166 Conn. 34. "To the extent to which [a trustee has] discretion, the court will not attempt to control [his] exercise of it as long as [he has] not abused it." Id. "This ordinarily means that so long as he acts not only in good faith and from proper motives, but also within the bounds of a reasonable judgment, the court will not interfere; but the court will interfere when he acts outside the bounds of a reasonable judgment. In other words, although there is a field, often a wide field, within which the trustee may determine whether to act or not and when and how to act, beyond that field the court will control him. How wide that field is depends upon the terms of the trust, the nature of the power, and all the circumstances." 3 Scott, Trusts (4th Ed. Fratcher 1989) 187, pp. 14-15.[8] "This rule applies even when the will has used the term `absolute' or `sole' discretion. " Gimbel v.Bernard F. Alva B. Gimbel Foundation, Inc., supra, 166 Conn. 21, 35.
Applying these principles to the present appeal, the court finds that to the extent to which the trustee has discretion, a court may control his exercise of it, to prevent its abuse. Furthermore, the court finds CT Page 14145 that the broad discretion conferred upon the trustee by the terms of article seventh, subparagraph D of the will must be construed in light of the expressed intent of the testator, as determined from reading the instrument as a whole,[9] and in light of any relevant circumstances. In article seventh, subparagraph A of the will, the testator clearly expressed that his primary intent in creating the trust was "to help provide for the education of [his] nieces and nephews and their descendants." Moreover, the final sentence of subparagraph D contemplates the trust's existence for a period as long as twenty-one years after the death of the issue of the testator's siblings alive at the testator's death. This sentence further evidences the testator's intent that the beneficiaries of the trust might include persons born long after his death, and that the educational interests of the descendants of the testator's nieces and nephews be considered by the trustee. Furthermore, the testator conditioned the trustee's power of termination, in article seventh, subparagraph D, upon trustee's determination that "continuance of the trust is uneconomic or not in the best interests of the beneficiary or beneficiaries." It is clear from the testator's use of the phrase "uneconomic or not in the best interests," that the trustee's discretion to terminate the trust was to be limited by these standards and was not intended to be absolute.
In light of the foregoing, the court finds that the discretion conferred upon the trustee by article seventh, subparagraph D of the will was not absolute or unlimited.
As a second reason for appeal, the trustee claims that his decision to terminate the trust is not unreasonable in view of the cost of maintaining the trust, the limited income realized by the trust and the fact that there appear to be no persons within the class of trust beneficiaries who desire to avail themselves of the educational benefit offered by the trust. In support of this claim, the trustee argues that the court should not deprive a trustee of the power which he possesses, so long as he exercises his "discretion fairly and honestly," and in the absence of "fraud, bad faith, or an abuse of discretion. " The trustee concludes that the court should not control the exercise of his discretion under the circumstances because the evidence fails to demonstrate that he has abused his discretion or that he has exercised it other than fairly and honestly, in the absence of fraud or bad faith. In response, the guardian argues that the trustee abused his discretion and that his decision to terminate the trust was not reasonable because it was predetermined, it was not predicated on any factual or financial basis, and because the trustee's interests and motives were directly at odds with all beneficiaries except the eight other nieces and nephews of the testator. CT Page 14146
As already determined, the trustee's discretion to terminate the trust is not absolute or unlimited. This is due to the manner in which the testator circumscribed its exercise. Specifically, the testator expressly conditioned the trustee's power of termination upon the trustee's determination that "continuance of the trust is uneconomic or not in the best interests of the beneficiary or beneficiaries." (Trial Exh. A, Will: art. seventh, ¶ D.) Moreover, the trustee's discretion to terminate the trust must be construed in light of the testator's intent as expressed in the relevant provisions of the will as a whole and in view of all other relevant circumstances. Gimbel v. Bernard F. Alva B.Gimbel Foundation, Inc., supra, 166 Conn. 26; Auchincloss v. City FarmersTrust Co., supra, 136 Conn. 271.
Furthermore, as previously discussed, "[t]he grant of broad powers and wide discretion to the trustee does not remove him from the scope of the powers of judicial supervision. " Gimbel v. Bernard F. Alva B. GimbelFoundation, Inc., supra, 166 Conn. 36. "[T]he court will not permit him to abuse the discretion. This ordinarily means that so long as he acts not only in good faith and from proper motives, but also within the bounds of a reasonable judgment, the court will not interfere; but the court will interfere when he acts outside the bounds of a reasonable judgment. In other words, although there is a field, often a wide field, within which the trustee may determine whether to act or not and when and how to act, beyond that field the court will control him. How wide that field is depends upon the terms of the trust, the nature of the power, and all the circumstances." 3 Scott, Trusts (4th Ed. Fratcher 1989) 187, pp. 14-15.
"In determining whether the trustee is acting within the bounds of a reasonable judgment the following circumstances may be relevant: (1) the extent of discretion intended to be conferred upon the trustee by the terms of the trust; (2) the existence or nonexistence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (3) the circumstances surrounding the exercise of the power; (4) the motives of the trustee in exercising or refraining from exercising the power; (5) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries." 3 Scott, Trusts (4th Ed. Fratcher 1989) 187, p. 15.
Connecticut courts may properly interfere with a trustee's exercise of discretion where the trustee acts from an improper motive. See Conner v.Hart, 157 Conn. 265, 253 A.2d 9 (1968); Conway v. Emeny, 139 Conn. 612,96 A.2d 221 (1953). The fact the trustee has an interest conflicting with that of the beneficiary or beneficiaries is a circumstances that the court may properly consider in determining whether the trustee is acting from an improper motive in the exercise of a discretionary power. 3 CT Page 14147 Scott, Trusts (4th Ed. Fratcher 1989) 187.5, p. 47. "[T]he trustee must not put itself in a position where its self-interest will conflict with its duties as trustee. . . . It must exercise due diligence in the administration of the trust. . . . The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know." (Citations omitted; internal quotation marks omitted.)Lyman v. Stevens, 123 Conn. 591, 597, 197 A. 313 (1938); accord Hackbarthv. Hackbarth, Superior Court, judicial district of New Haven, Docket No. 409600 (June 16, 1999, Levin, J.), aff'd, 62 Conn. App. 490, 767 A.2d 1276, cert. denied, 256 Conn. 916, 773 A.2d 944 (2001). "One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the cestui que trust. He must exclude all selfish interest . . . A trustee must always be loyal to his trust." (Citations omitted; internal quotation marks omitted.) Hall v. Schoenwetter, 239 Conn. 553, 559,686 A.2d 980 (1996).
Applying these principles to the evidence, the court finds that the trustee reasonably could not have determined that continuation of the trust was either "uneconomic" or "not in the best interests" of the beneficiaries. (Trial Exh. A, Will: art. seventh, ¶ D.) As to whether continuation of the trust was "uneconomic," at trial, the trustee testified that the trust was losing money, the documentary evidence at trial disclosed, however, that the trust's funds had increased in value.[10] The trustee also testified that he lacked knowledge regarding the costs of education, and that he thought that the trust's funds could only be applied to pay for education at the college level. The court finds, however, that the testator's intention that the trust's funds be available to help provide for the costs of various levels of education is evident from the use of the terms "education," "higher education," and "graduate education. " (Trial Exh. A, Will: art. seventh, ¶¶ A-C.) To read the language otherwise would ignore basic principles of language and construction and render the different terms meaningless.Kolodney v. Kolodney, supra, 6 Conn. App. 122.
Furthermore, the evidence adduced at trial failed to demonstrate that the trustee reasonably determined that termination of the trust was in the best interests of the beneficiaries. The class of potential beneficiaries of the trust includes the testator's "nieces and nephewsand their descendants." (Emphasis added.) (Trial Exh. A, Will: art. seventh, ¶ A.) Additionally, the will provides that the trust may endure for a period as long as twenty-one years after the death of the issue of the testator's siblings alive at the testator's death. This further evidences the testator's intent that the beneficiaries of the CT Page 14148 trust might include persons born long after his death and certainly that the trust might endure for a period of longer than two years,[11] and that the interests of the descendants of the testator's nieces and nephews be considered. (Trial Exh. A, Will: art. seventh, ¶ A.) Moreover, each of the trustee's witnesses at trial, including the trustee himself, was either a niece or a nephew of the testator and within the class of nine distributees who would benefit from the trust's early termination. Each of the trustee's witnesses testified that they thought the trust should be terminated. The court notes that the class of potential beneficiaries includes at least seven children or infants under the age of eighteen who are descendants of the testator's nieces and nephews. (Trial Exh. 1; 2.) The court is mindful that in the future, persons within this class of descendants might seek to avail themselves of the educational benefits offered by the trust. Moreover, the court notes that each of the three times that the trustee sent letters to potential beneficiaries of the trust, in 1998, 1999, and 2000, respectively, the trustee excluded at least fourteen known potential beneficiaries, for the claimed reason that the trustee lacked their addresses.[12] (Trial Exh.'s H; I; J.) In sending these letters to a limited group of beneficiaries, the trustee testified that he did so in consideration of the interests of those beneficiaries who might need the trust's funds "right now," for college education. (Trial Transcript, pp. 58-59.)
In light of the foregoing, the court finds that the motives of the trustee and the desires of the testator's nieces and nephews are clearly in conflict with the testator's expressed primary intent, and that the trustee's interest, as a proposed distributee, is in conflict with the interests of future beneficiaries of the trust. Furthermore, the court finds that the evidence failed to demonstrate that the trustee's decision to terminate the trust was reasonable, or that the trustee had a reasonable basis for determining that continuance of the trust was "uneconomic or not in the best interests" of the beneficiaries. (Trial Exh. A, Will: art, seventh, ¶ D.)
In conclusion having considered the parties' submissions, the evidence and testimony presented at trial and the relevant circumstances, the court concludes that under the circumstances, the evidence does not support the stated reasons for appeal. Consequently, the trustee's appeal is denied and the orders and decrees of the Greenwich Probate Court, dated October 5, 2000, are affirmed.
ROBERT J. CALLAHAN, J.T.R.