******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARIAN PIKULA *v.* DEPARTMENT OF
SOCIAL SERVICES
(SC 19533)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued January 25—officially released May 10, 2016*

*J. Colin Heffernan*, with whom, on the brief, was
*John C. Heffernan*, for the appellant (plaintiff).

*Patrick B. Kwanashie*, assistant attorney general,
with whom, on the brief, was *George Jepsen*, attorney
general, for the appellee (defendant).

*Opinion*

EVELEIGH, J. The plaintiff, Marian Pikula, appeals from the judgment of the trial court dismissing her appeal from the decision of an administrative hearing officer for the defendant, the Department of Social Services (department),[1] denying her application for benefits under the state administered Medicaid program (Medicaid)[2] because her assets, in the form of a testamentary trust, exceeded prescribed Medicaid limits. We conclude that the trial court should not have dismissed the appeal on the ground that the hearing officer correctly determined that the trust was an asset available to the plaintiff. Accordingly, we reverse the judgment of the trial court.

The following undisputed facts, as found by the trial court, are relevant to this appeal. "In 1989, John Pikula, the plaintiff's father, executed a will containing a testamentary trust for his two daughters: Dorothy McKee and the plaintiff. When John Pikula died in 1991, the trust became effective and the Probate Court appointed a trustee."

The testamentary language creating the trust provided as follows: "A. Until [the plaintiff] shall die, the [t]rustee shall pay to or spend on behalf of [the plaintiff] as much of the net income derived from this trust fund as the [t]rustee may deem advisable to provide properly for [her] maintenance and support and may incorporate any income not so distributed into the principal of the fund at the option of the [t]rustee.

"B. I hereby authorize and empower the [t]rustee in his sole and absolute discretion at any time and from time to time to disburse from the principal for any of the trust estates created under this [will], even to the point of completely exhausting the same, such amount as he may deem advisable to provide adequately and properly for the support and maintenance of the current income beneficiaries thereof, any expenses incurred by reason of illness and disability. In determining the amount of principal to be so disbursed, the [t]rustee shall take into consideration any other income or property which such income beneficiary may have from any other source, and the [t]rustee's discretion shall be conclusive as to the advisability of any such disbursement and the same shall not be questioned by anyone. For all sums so distributed, the [t]rustee shall have full acquittance."

In March, 2012, the plaintiff entered a long-term care facility. At that time, she applied for financial and medical assistance under Medicaid. At the time she applied for Medicaid benefits, the trust value was approximately $169,745.91. In May, 2013, the department denied the plaintiff's application for Medicaid benefits on the ground that her assets, including the trust, exceeded the relevant asset limits.

The plaintiff then requested a hearing to contest the department's decision. The hearing occurred in October, 2013. Thereafter, on December 20, 2013, the hearing officer issued a decision upholding the department's denial of the plaintiff's Medicaid benefits because the trust was an asset that was available to her and, therefore, her assets exceeded the regulatory limits.

The plaintiff subsequently requested reconsideration of the decision pursuant to General Statutes § 4-181a (a) (1) (A). Her motion was denied. Pursuant to General Statutes §§ 17b-61 and 4-183, the plaintiff appealed from the hearing officer's decision to the Superior Court.

In her complaint, the plaintiff alleged, inter alia, that, under the terms of the department's policy manual and applicable case law, the trust assets are not available to the plaintiff. Specifically, the plaintiff asserted that, under the terms of the trust, the assets of the trust are not available to her because she is not entitled to receive trust principal and the trustee has sole and absolute discretion regarding trust expenditures and his decisions cannot be challenged by anyone.[3] The trial court rendered judgment dismissing the plaintiff's appeal, concluding that the hearing officer properly determined that the trust in this case was an available asset and that, therefore, the plaintiff's assets disqualified her from Medicaid eligibility.

The plaintiff appealed from the trial court's judgment of dismissal to the Appellate Court. Thereafter, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal to this court, the plaintiff claims that the trial court improperly upheld the hearing officer's conclusion that the trust was an asset available to the plaintiff as defined by relevant Medicaid regulations. Specifically, the plaintiff claims that the testator intended to create a discretionary, supplemental needs trust, the assets of which should not be considered available for Medicaid purposes. The department, however, contends that the testamentary language indicates that the testator intended the trust to provide for the plaintiff's general support, in which case it would constitute an asset available to the plaintiff. We agree with the plaintiff that the testator intended to create a discretionary, supplemental needs trust and, therefore, we further agree that the trust corpus and income may not be considered to be available to the plaintiff for the purpose of determining eligibility for Medicaid benefits.

We begin by setting forth our applicable standard of review. Resolution of this issue requires us to determine whether the hearing officer properly construed the terms of the trust instrument. "The construction of a will presents a question of law . . . . *Canaan National Bank* v. *Peters*, 217 Conn. 330, 335, 586 A.2d 562 (1991). As we previously have stated . . . [c]onclusions of law

reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 504, [832 A.2d 660] (2003)." (Internal quotation marks omitted.) *Corcoran* v. *Dept. of Social Services*, 271 Conn. 679, 698, 859 A.2d 533 (2004).

Given the nature of the plaintiff's claim, namely, that the trial court improperly upheld the hearing officer's determination that the trust in the present case was a general needs trust for the purpose of eligibility for Medicaid benefits, "[o]ur analysis begins with an overview of the [M]edicaid program. The program, which was established in 1965 as Title XIX of the Social Security Act and is codified at 42 U.S.C. § 1396 et seq. ([M]edicaid act), is a joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of, among other things, medically necessary nursing facility care. . . . The federal government shares the costs of [M]edicaid with those states that elect to participate in the program, and, in return, the states are required to comply with requirements imposed by the [M]edicaid act and by the [S]ecretary of the Department of Health and Human Services. . . . Specifically, participating states are required to develop a plan, approved by the [S]ecretary of [H]ealth and [H]uman [S]ervices, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance to be provided. . . .

"Connecticut has elected to participate in the [M]edicaid program and has assigned to the department the task of administering the program. . . . Pursuant to General Statutes §§ 17b-262 and 17b-10, the department has developed Connecticut's state [M]edicaid plan and has promulgated regulations that govern its administration. . . .

"The [M]edicaid act requires that a state's [M]edicaid plan make medical assistance available to qualified individuals. 42 U.S.C. § 1396a (a) (10). The term medical assistance means payment of part or all of the cost of . . . care and services . . . [including] nursing facility services . . . . 42 U.S.C. § 1396d (a); see *Catanzano* v. *Wing*, 103 F.3d 223, 229 (2d Cir. 1996). Participating states are required to provide coverage to certain groups and are given the option to extend coverage to various other groups. The line between mandatory and optional coverage primarily is drawn in 42 U.S.C. § 1396a (a) (10) (A): mandatory coverage is specified in 42 U.S.C. § 1396a (a) (10) (A) (i); and optional coverage is set forth in subsection (a) (10) (A) (ii). In [M]edicaid parlance, individuals who qualify for [M]edicaid benefits pursuant to those subsections are referred to as the categorically needy because, in general, they are

eligible for financial assistance under Titles IV-A (Aid to Families with Dependent Children) or XVI (Supplemental Security Income for the Aged, Blind, and Disabled) of the Social Security Act.

"Under the [M]edicaid act, states have an additional option of providing medical assistance to the medically needy—persons who . . . lack the ability to pay for their medical expenses but do not qualify as categorically needy solely because their income exceeds the income eligibility requirements of the applicable categorical assistance program. . . . The medically needy become eligible for [M]edicaid, if the state elects to cover them, by incurring medical expenses in an amount sufficient to reduce their incomes below the income eligibility level set by the state in its [M]edicaid plan. See 42 U.S.C. § 1396a (a) (17) (in determining eligibility, state must take costs . . . incurred for medical care into account); see also 42 C.F.R. § 435.301. Only when they spend down the amount by which their income exceeds that level, are [medically needy persons] in roughly the same position as [categorically needy] persons . . . [because then] any further expenditures for medical expenses . . . would have to come from funds required for basic necessities. *Atkins* v. *Rivera*, [477 U.S. 154, 158, 106 S. Ct. 2456, 91 L. Ed. 2d 131 (1986)]. Connecticut has chosen to cover the medically needy. . . .

"The [M]edicaid act, furthermore, requires participating states to set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under the program. 42 U.S.C. § 1396a (a) (17) . . . . The resources standard set forth in Connecticut's state [M]edicaid plan for categorically needy and medically needy individuals is $1600. General Statutes §§ 17b-264 and 17b-80 (c); [Dept. of Social Services, Uniform Policy Manual] § 4005.10 . . . . Consequently, a person who has available resources; see 42 U.S.C. § 1396a (a) (17) (B); in excess of $1600 is not eligible to receive benefits under the Connecticut [M]edicaid program even though the person's medical expenses cause his or her income to fall below the income eligibility standard. . . . *Ahern* v. *Thomas*, 248 Conn. 708, 713–16, 733 A.2d 756 (1999)." (Citation omitted; internal quotation marks omitted.) *Palomba-Bourke* v. *Commissioner of Social Services*, 312 Conn. 196, 203–206, 92 A.3d 932 (2014).

This court has stated that, "[u]nder applicable federal law, only assets actually available to a medical assistance recipient may be considered by the state in determining eligibility for public assistance programs such as [Medicaid]. . . . A state may not, in administering the eligibility requirements of its public assistance program . . . presume the availability of assets not actually available . . . ." (Citations omitted; emphasis omitted.) *Zeoli* v. *Commissioner of Social Services*, 179

Conn. 83, 94, 425 A.2d 553 (1979). This principal "has served primarily to prevent the [s]tates from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients." *Heckler* v. *Turner*, 470 U.S. 184, 200, 105 S. Ct. 1138, 84 L. Ed. 2d 138 (1985).

To resolve the issue on appeal, we must determine whether the assets in the testamentary trust were available to the plaintiff. "For the purposes of determining eligibility for the Medicaid program, an available asset is one that is actually available to the applicant or one that the applicant has the legal right, authority or power to obtain or to have applied for the applicant's general or medical support. If the terms of a trust provide for the support of an applicant, the refusal of a trustee to make a distribution from the trust does not render the trust an unavailable asset." General Statutes (Supp. 2016) § 17b-261 (c).[4] For Medicaid purposes, general support trusts are considered available because a beneficiary can compel distribution of the trust income. See General Statutes § 52-321. In other words, the beneficiary has a "legal right . . . to obtain" the funds. See General Statutes (Supp. 2016) § 17b-261 (c). Conversely, supplemental needs trusts, in which a trustee retains unfettered discretion to withhold the income, are not considered available to the beneficiary. *Connecticut Bank & Trust Co.* v. *Hurlbutt*, 157 Conn. 315, 327, 254 A.2d 460 (1968) (spendthrift trust not open to alienation or assignment by anyone until income paid over to beneficiary); *Bridgeport-City Trust Co.* v. *Beach*, 119 Conn. 131, 141, 174 A. 308 (1934) (beneficiary may not alienate or assign interest of spendthrift trust).

"It is well settled that in the construction of a testamentary trust, the expressed intent of the testator must control. This intent is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the testator when the instrument was executed, including the condition of his estate, his relations to his family and beneficiaries and their situation and condition. *Gimbel* v. *Bernard F. & Alva B. Gimbel Foundation, Inc.*, 166 Conn. 21, 26, 347 A.2d 81 (1974). Therefore, in determining whether the assets of a testamentary trust are available to a beneficiary, this court considers whether the testator intended to create a supplemental needs trust or a general support trust. See *Zeoli* v. *Commissioner of Social Services*, supra, 179 Conn. 91–92." (Internal quotation marks omitted.) *Corcoran* v. *Dept. of Social Services*, supra, 271 Conn. 700.

"A trust which creates a fund for the benefit of another, secures it against the beneficiary's own improvidence, and places it beyond the reach of his creditors is a spendthrift trust. *Carter* v. *Brownell*, 95

Conn. 216, 223, 111 A. 182 [1920]. Section 52-321 . . . provides that trust fund income is not subject to the claims of creditors of the beneficiary if the trustee is granted the power to accumulate or withhold trust income or if the income has been expressly given for the support of the beneficiary or his family. See *Cromwell* v. *Converse*, 108 Conn. 412, 424–25, 143 A. 416 [1928] . . . ." (Citation omitted.) *Zeoli* v. *Commissioner of Social Services*, supra, 179 Conn. 88; see also Restatement (Third), Trusts § 58 (2003) ("[i]f the terms of a trust provide that a beneficial interest shall not be transferable by the beneficiary or subject to claims of the beneficiary's creditors, the restraint on voluntary and involuntary alienation of the interest is valid").

Accordingly, to resolve the issue on appeal, we must determine whether John Pikula intended to create a supplemental needs trust or a general support trust. In making this determination, we agree with both parties and the trial court that prior case law from this court provides the appropriate framework within which to examine this issue. Specifically, *Zeoli* v. *Commissioner of Social Services*, supra, 179 Conn. 83, and *Corcoran* v. *Dept. of Social Services*, supra, 271 Conn. 679, guide our analysis of this issue.

First, in *Zeoli* v. *Commissioner of Social Services*, supra, 179 Conn. 84–88, this court concluded that the testator intended to create a supplemental needs trust for the plaintiffs, his two disabled daughters.[5] In doing so, this court recognized that "[t]o determine the discretionary powers provided, it is necessary to ascertain the dispositive intention as expressed by the language of the entire will in the light of the circumstances surrounding the testator when the instrument was executed, including the condition of his estate, his relations to his family and beneficiaries and their situation and condition." (Internal quotation marks omitted.) Id., 89; see also *Rosa* v. *Palmer*, 177 Conn. 10, 13, 411 A.2d 12 (1978); *Gimbel* v. *Bernard F. & Alva B. Gimbel Foundation, Inc.*, supra, 166 Conn. 26; *Colonial Bank & Trust Co.* v. *Stevens*, 164 Conn. 31, 37, 316 A.2d 768 (1972); *Connecticut Bank & Trust Co.* v. *Lyman*, 148 Conn. 273, 279, 170 A.2d 130 (1961). On the basis of these principles, this court concluded that "the testator's intent was to provide the trustee with sufficient flexibility to use the funds under the trust solely for supplemental support. Both the surrounding circumstances and the language of the will militate in favor of this interpretation. The trust established by [the testator's] will clearly recognizes the obvious incapacity of his daughters to care for themselves. As the amount held under trust, approximately one-half of his entire estate, indicates, the [testator] was a person of modest means. Presumably, the funds under the trust would not provide for general support of his daughters in an institution for much more than a few months. Moreover, at the time of the will's execution and at the time of

the testator's death, the daughters were not receiving medical assistance payments and the testator could not know if and how soon such benefits would become available." (Footnotes omitted.) *Zeoli* v. *Commissioner of Social Services*, supra, 90.

This court further explained that "[t]he trust grants the trustee in express terms the power both to discriminate totally against either of the beneficiaries by withholding all income and to disregard funds that might be available to either of the beneficiaries. On the other hand, in precatory language, the trust provides that the trustee apply 'the net income or principal of the trust for the maintenance, support, education, health and general welfare of those of my daughters who my [t]rustee believes would benefit most from a share of the income of this trust after considering the income of the beneficiaries from other sources.'

"In granting the trustee the ability to discriminate against either of the beneficiaries as well as to consider other sources of funds available to the beneficiaries, the testator reveals an intent to provide for only the supplementary support of his daughters. The combination of express and precatory terms in the will attempts to grant the trustee flexibility to provide the support that would benefit either of the beneficiaries the most, that is, imposing on the trustee the legal duty to furnish only supplementary support. If the testator had desired to create a trust for general support, it would have been simple to do so and no discriminatory provision would have been necessary or desirable." (Footnote omitted.) Id., 90–91. On the basis of the terms of the trust, this court concluded that the testator had intended to create a supplemental needs trust and that those assets were not available to the daughters for the purpose of determining their eligibility for Medicaid benefits. Id., 97.

In 2004, this court again confronted whether a trust was available for the purpose of Medicaid eligibility in *Corcoran* v. *Dept. of Social Services*, supra, 271 Conn. 679. In *Corcoran*, this court acknowledged that the testamentary language reflective of the testator's intent in *Corcoran* was markedly different than that used in *Zeoli*. Id., 701. Specifically, this court explained that "[i]n *Zeoli*, the trust instrument was replete with references to the 'absolute and uncontrolled discretion' afforded the [trustee] in [his] decision-making process. . . . In addition to the overt references to the unfettered discretion of the [trustee], the court in *Zeoli* deemed the provision authorizing the trustee to discriminate among the beneficiaries when making distributions highly probative of the vast level of discretion the testator intended to confer on the trustee." (Citation omitted.) Id. This court then compared the testamentary language in *Corcoran*, explaining that "the testator granted the trustees 'sole discretion' to make distribu-

tions and provided them with factors to consider when making 'discretionary distributions . . . .' This language is not as strong as that used in *Zeoli* and suggests that the testator in the present case intended to confer a lesser amount of discretion." (Footnote omitted.) Id., 701–702.

This court further reasoned as follows: "The principal distinction between *Zeoli* and [*Corcoran*], however, is the manner in which the respective testators expressed their intentions regarding the use of the trust funds. In *Zeoli*, after establishing the trust, the testator provided in his will that it [was his] fond hope that [his] trustee pay or apply the net income or principal of the trust for the maintenance, support, education, health and general welfare of [the beneficiaries] . . . . [In *Zeoli*, the] court interpreted this to mean that [t]he combination of express and precatory terms in the will attempts to grant the trustee flexibility to provide the support that would benefit either of the [daughters] the most, that is, imposing on the trustee the legal duty to furnish only supplementary support." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id., 702. This court, however, found the testamentary language in *Corcoran* to be distinguishable from that in *Zeoli*. Id. In *Corcoran*, the testator created the trust with the following language: "If [the plaintiff] is then living, the trust established for her shall be retained by my trustees to hold, manage, invest and reinvest said share as a [t]rust [f]und, paying to or expending for the benefit of [the plaintiff] so much of the net income and principal of said [t]rust as the [t]rustees, in their sole discretion, shall deem proper for her health, support in reasonable comfort, best interests and welfare . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 703. This court relied on the fact that the trustees did not have absolute discretion, instead their sole discretion was "limited by the ascertainable standard of the plaintiff's 'health, support in reasonable comfort, best interests and welfare . . . .' " Id. On the basis of these distinctions, this court concluded that the testamentary trust in *Corcoran* did not display the testamentary intent to provide only for the plaintiff's supplemental needs and, therefore, was a general needs trust available to the plaintiff. Id.

These cases provide a framework for considering the language of the trust in the present case. Specifically, in *Zeoli* and *Corcoran*, this court identified and examined several factors that are useful in determining whether a particular testamentary trust is intended to be a general needs trust or a supplemental needs trust—namely, the amount and nature of the trustee's discretion with regards to trust income and principal, any limitations or guiding principles within which the trustee must operate, and the factual circumstances regarding the establishment of the trust, including the amount of the trust.

With these factors in mind, we examine the language of the testamentary trust in the present case. The relevant portions of the testamentary trust in the present case provides as follows: "I give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal and mixed, of whatever nature and wheresoever situated, including all property that I may acquire or become entitled to after the execution of this will to [the trustee] in trust, nevertheless . . . for the benefit of . . . [the plaintiff] . . . and [McKee] . . . . Said [t]rustee shall hold, manage and control all of the aforesaid property as a trust estate with all of the rights and powers subject to limitations herein enumerated for the following uses and purposes:

"A. Until [the plaintiff] shall die, the [t]rustee shall pay to or spend on behalf of [the plaintiff] as much of the net income derived from this trust fund as the [t]rustee may deem advisable to provide properly for [her] maintenance and support and may incorporate any income not so distributed into the principal of the fund at the option of the [t]rustee.

"B. I hereby authorize and empower the [t]rustee in his sole and absolute discretion at any time and from time to time to disburse from the principal for any of the trust estates created under this [will], even to the point of completely exhausting the same, such amount as he may deem advisable to provide adequately and properly for the support and maintenance of the current income beneficiaries thereof, any expenses incurred by reason of illness and disability. In determining the amount of principal to be so disbursed, the [t]rustee shall take into consideration any other income or property which such income beneficiary may have from any other source, and the [t]rustee's discretion shall be conclusive as to the advisability of any such disbursement and the same shall not be questioned by anyone. For all sums so distributed, the [t]rustee shall have full acquittance."

First, the language set forth previously in this opinion indicates that the trustee in the present case need only use as much income from the trust "as the [t]rustee may deem advisable" to the plaintiff. The testamentary language further provides that any unused income may be returned to the trust principal. Although the language in the present case indicates that the trustee may use the net income for the maintenance and support of the plaintiff, the fact that the trustee is only required to use as much income as he "may deem advisable" to provide for such maintenance, indicates that the testator intended for the trustee to have complete discretion in determining what, if any, of the income was to be used for the plaintiff's maintenance. Furthermore, the fact that the trust provides that any unused income may be returned to the principal of the trust indicates that the testator did not intend to provide for the general needs

of the plaintiff. The trust was only valued at approximately $169,745, therefore, it is unlikely that the income of the trust would have been significant enough to provide for the plaintiff's maintenance at the time the testator executed his will in 1989 or when the trust was established in 1991.

Furthermore, the testamentary language in the present case provides that the trustee has "sole and absolute discretion" to make disbursements from the principal of the trust. The trust further provides that the trustee's discretion "shall be conclusive as to the advisability of any such disbursement and the same shall not be questioned by anyone." Furthermore, the trust provides a release from liability for the trustee regarding any distributions of principal. On the basis of the foregoing, it is clear that no person can compel the trustee to disburse any principal to the plaintiff. We conclude that the language regarding the discretion of the trustee in the present case is analogous to the language providing absolute and sole discretion to the trustee in *Zeoli*.

Next, we examine whether the trust in the present case contains any limitations or guiding principles within which the trustee must operate. In the present case, the trust mentions "support" and "maintenance" in both the section providing for expenditure of the income and the section addressing disbursement of principal. Nevertheless, in each of these sections the "support" and "maintenance" language is followed or preceded by language allowing the trustee broad discretion to do so only if he deems it advisable. Unlike the language of the trust in *Corcoran*, nothing in the present trust mentions a standard by which the trustee shall make the expenditures or distribution. In *Corcoran*, this court relied on language that the trustees shall "hold, manage, invest and reinvest said share as a [t]rust [f]und, paying to or expending for the benefit of [the plaintiff] so much of the net income and principal of said [t]rust as the [t]rustees, in their sole discretion, shall deem proper for her health, support in reasonable comfort, best interests and welfare . . . ." (Emphasis omitted; internal quotation marks omitted.) *Corcoran* v. *Dept. of Social Services*, supra, 271 Conn. 703. This court reasoned that the language of the trust in *Corcoran* acted as a limitation on the discretion of the trustees because it provided a standard within which the trustees must operate in making expenditures. Id.

On the other hand, the language of the trust in *Zeoli*, provided that "[w]ithout in any way limiting the absolute discretion of my [t]rustee, it is my fond hope that my trustee pay or apply the net income or principal of the trust for the maintenance, support, education, health and general welfare of those of my daughters who my [t]rustee believes would benefit most from a share of the income of this trust after considering the income of the beneficiaries from other sources." (Inter-

nal quotation marks omitted.) *Zeoli* v. *Commissioner of Social Services*, supra, 179 Conn. 87 n.2. This court concluded in *Zeoli* that "[t]he combination of express and precatory terms in the will attempts to grant the trustee flexibility to provide the support that would benefit either of the beneficiaries the most, that is, imposing on the trustee the legal duty to furnish only supplementary support." Id., 91. We conclude that the language in the present case is more similar to that language in *Zeoli* and provides that the trustee is required to provide only supplemental support.

We next consider the factual circumstances regarding the establishment of the trust, including the amount of the trust. In *Zeoli*, this court considered the fact that the testator's estate was a modest $9500 in 1975. Id., 85. This court reasoned that, because the beneficiary had a mental impairment that required institutionalization, the modest trust assets would be exhausted quickly if it was treated as a general needs trust. Id., 90. This court reasoned that these factual circumstances weighed in favor of understanding that the testator did not intend for the trust to be a general support trust. Id. In *Corcoran*, however, this court concluded that the testator intended to create a general support trust with a significantly larger estate—approximately $854,307. *Corcoran* v. *Dept. of Social Services*, supra, 271 Conn. 682.

In the present case, the testator had a relatively small estate. Indeed, the trust assets in the present case consisted mainly of the plaintiff's primary residence, the testator's home. In March, 2012, after the home was sold, the trust assets totaled $169,745.91. Much like the situation in *Zeoli*, the assets of the present trust would be quickly exhausted if they were applied to the expenses related to the plaintiff's impairment for which she has sought residential placement. Accordingly, we conclude that the factual circumstances surrounding the establishment of the trust in the present case further bolster our conclusion that it is a supplemental needs trust.

On the basis of the foregoing, we conclude that the trial court improperly dismissed the plaintiff's appeal from the decision of the hearing officer determining that the trust in the present case is a general support trust and that, therefore, the assets are available to the plaintiff. Instead, we conclude that the trust in the present case is a supplemental needs trust and that, therefore, the assets are not available to the plaintiff for the purpose of determining eligibility for Medicaid benefits.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other justices concurred.

[1] We note that the Commissioner of Social Services acts on behalf of the

department. For the sake of simplicity, references in this opinion to the department include the Commissioner of Social Services.

[2] "Medicaid is a federal program that provides health care funding for needy persons through cost-sharing with states electing to participate in the program." (Internal quotation marks omitted.) *Corcoran* v. *Dept. of Social Services*, 271 Conn. 679, 683 n.4, 859 A.2d 533 (2004).

[3] In her complaint, the plaintiff also alleged that the hearing officer was barred by the doctrine of collateral estoppel from determining that the trust was a "general support trust" or that the assets were "available" to the plaintiff because the Probate Court had previously decided that the trust was a supplemental needs trust and that the plaintiff could not force the trustee to make any distributions. The trial court determined that the doctrine of collateral estoppel did not bar the hearing officer from determining that the trust was a general needs trust for the purpose of determining the plaintiff's eligibility for Medicaid benefits. On appeal, the plaintiff asserts that the trial court improperly determined that the hearing officer was not collaterally estopped from determining that the trust was a general needs trust. Because we conclude that the trial court improperly upheld the hearing officer's conclusion that the trust was a general needs trust and available to the plaintiff, we need not reach the issue of collateral estoppel.

[4] We note that § 17b-261 has been amended by our legislature since the events underlying the present appeal. See, e.g., Public Acts 2015, No. 15-69, § 17. These amendments are not, however, relevant to the present appeal. For the sake of simplicity, all references to § 17b-261 in this opinion are to the version appearing in the 2016 supplement to the General Statutes.

[5] The language of the trust in *Zeoli* provided as follows: "All of the rest, residue and remainder of my property and estate, real, person or mixed, of whatsoever the same may consist and wheresoever the same may be situated, all of which is hereinafter referred to as my residuary estate, shall be disposed of as follows:

"(a) I give, devise and bequeath one-half . . . of my residuary estate unto my son . . . to be his absolutely and forever;

"(b) I give, devise and bequeath one-half . . . of my residuary estate to my [t]rustee hereinafter named in trust [nevertheless], to hold in a single trust for and until the death of the survivor of my daughters, to invest and reinvest the principal of such trust and to dispose of the net income and principal thereof as follows:

"To pay or apply so much of the net income or the principal of such trust to or among either one or both of my daughters as shall be living from time to time during the term of such trust, and in such proportions and amounts as my [t]rustee shall determine in his absolute and uncontrolled discretion. Such amounts of net income or principal may be paid or applied without regard to equality of distribution and regardless of whether any one of my daughters may be totally deprived of any benefit hereunder. My [t]rustee, in exercising his absolute and uncontrolled discretion, shall not be required to consider the amount of income from other sources of any beneficiary or the amount of any beneficiary's independent property or the extent to which any beneficiary may be entitled to support by a parent or any other person. The judgment of my [t]rustee as to the allocation of the net income or principal of this trust among the beneficiaries shall be final and conclusive upon all interested persons and upon making such payments or application my [t]rustee shall be fully released and discharged from all further liability or accountability therefor. My trustee shall not be required to distribute any net income of such trust currently and may, in his absolute and uncontrolled discretion, accumulate any part or all of the net income of such trust, which such accumulated net income shall be available for distribution to the beneficiaries as aforesaid.

"Without in any way limiting the absolute discretion of my [t]rustee, it is my fond hope that my trustee pay or apply the net income or principal of the trust for the maintenance, support, education, health and general welfare of those of my daughters who my [t]rustee believes would benefit most from a share of the income of this trust after considering the income of the beneficiaries from other sources." (Internal quotation marks omitted.) *Zeoli* v. *Commissioner of Social Services*, supra, 179 Conn. 86–87 n.2.