******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTOINETTA ROMANELLI, EXECUTOR (ESTATE
OF ANTONIO ROMANELLI) *v*. DEPARTMENT
OF SOCIAL SERVICES
(AC 45560)

Moll, Cradle and Bear, Js.

*Syllabus*

The plaintiff, the executor of the estate of R, appealed to this court from
the judgment of the trial court dismissing the plaintiff's appeal from the
decision of the defendant, the Department of Social Services, denying
R's application for long-term Medicaid benefits. R and the plaintiff estab-
lished a trust for which they were both the grantors and the beneficiaries.
Pursuant to the terms of the trust, R and the plaintiff retained the right
to withdraw the trust property, which included certain real property
in Old Lyme, and to revoke the agreement so long as they were not
incapacitated. R was later admitted to a long-term care facility and
applied for long-term care Medicaid benefits. The defendant sent a
written request to R's authorized representative, indicating that the
defendant had determined that the Old Lyme property was owned by
the trust and asking for verification of ownership in the event that its
determination was incorrect. R's representative did not provide any
information in response to the request, either disputing the ownership
of the Old Lyme property or arguing that it should not be included in
the determination of R's Medicaid eligibility. R died, and, a few months
later, the defendant denied R's application for Medicaid benefits because
the value of his assets exceeded the program's eligibility limit. M, the
plaintiff's attorney, filed an administrative appeal from the denial of the
application, claiming that the defendant improperly had included the
trust assets in its calculation of R's eligibility because R was incapable
of revoking the trust to access its assets. At the administrative hearing,
M testified and submitted an affidavit, the substance of which was that
R was not competent to revoke the trust. The defendant's hearing officer
concluded that M's affidavit was not sufficient evidence to make a
determination regarding R's mental capacity and, accordingly, that the
defendant properly denied R's application because, in light of the value of
the Old Lyme property alone, R's assets exceeded the limit for Medicaid
eligibility. The plaintiff filed an administrative appeal in the Superior
Court, which dismissed the appeal. *Held*:

1. The trial court appropriately determined that the defendant's hearing
officer did not act unreasonably, arbitrarily, illegally, or in abuse of her
discretion in determining that the Old Lyme property was an available
asset for purposes of calculating R's Medicaid eligibility and that decision
was supported by substantial evidence: the plaintiff's argument that the

Old Lyme property was not "actually available" pursuant to the applicable statute (§ 17b-261 (c)) for purposes of calculating Medicaid eligibility because R was not legally capable of revoking the trust was not persuasive, as the hearing officer determined that M's affidavit and testimony were not sufficient to establish incapacity, the plaintiff did not provide any other evidence to support R's alleged mental incapacity, such as medical evidence or third-party testimony or statements, and this court could not retry the case or substitute its own judgment for that of the hearing officer with respect to the weight of the evidence.

2. The defendant did not violate due process by failing to provide, in its written request for verification of ownership of the Old Lyme property, notice that the revocability of the trust was at issue in determining R's eligibility for Medicaid benefits: contrary to the plaintiff's assertion, the defendant's request for information did not qualify under the applicable federal regulation (42 C.F.R. § 435.917 (a)) as a decision affecting R's Medicaid eligibility because, according to the clear language of the request, the application remained pending and the defendant was requesting additional information in order to make a decision regarding R's eligibility; moreover, any argument that the defendant was required to request information from the plaintiff regarding R's mental capacity failed because the burden of establishing eligibility was on R; furthermore, the defendant provided notice of its decision to deny Medicaid benefits once that decision had been made; additionally, at M's request, the plaintiff received a full hearing on the issue of R's incompetency following the denial of the application even though that issue had not been asserted previously.

Argued November 7, 2023—officially released June 11, 2024

*Procedural History*

Appeal from the decision of the defendant denying an application for long-term care Medicaid benefits filed by the plaintiff's decedent, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cordani, J.*; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Santa Mendoza*, for the appellant (plaintiff).

*Tanya Feliciano DeMattia*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Antoinetta Romanelli, executor of the estate of her husband, Antonio Romanelli (applicant), appeals from the judgment of the Superior Court dismissing her appeal from the decision of the defendant, the Department of Social Services, denying long-term care Medicaid benefits to the applicant. The plaintiff claims that (1) certain real property, which was contained in a trust and which the defendant used in its calculations to determine that the applicant was over the asset limit for Medicaid eligibility, was not actually available to the applicant due to his alleged incapacity to revoke the trust and therefore should not have been used to calculate his Medicaid eligibility and (2) the defendant violated due process by failing to provide notice to the applicant and/or his personal representative that the revocability of the trust was at issue in calculating the applicant's Medicaid eligibility. We disagree and, accordingly, affirm the judgment of the Superior Court.

The following facts, as set forth by the Superior Court, and procedural history are relevant to our resolution of this appeal. On October 15, 2001, the applicant and the plaintiff (collectively, Romanellis) established a Declaration of Trust (trust) of which they were both the grantors and the beneficiaries. At issue in the present case is the real property in Old Lyme that was contained in the trust.[1] In September, 2019, the applicant was admitted to a long-term care facility and, in December, 2019, the applicant and his representative filed an application for long-term care Medicaid benefits (application). The applicant died in August, 2020. On October 14, 2020, the defendant denied the applicant's

---

[1] The trust also contained real property located in Newington, which was used as the Romanellis' home, and which the hearing officer noted was exempt from the defendant's calculation of the applicant's Medicaid eligibility.

application for Medicaid benefits for the period from December, 2019, through September, 2020.

Santa Mendoza, the plaintiff's attorney, filed the administrative appeal on behalf of the applicant's son, Nick Romanelli, from the defendant's denial of the application for Medicaid benefits and Mendoza was the contact person with respect to that proceeding. The basis for the appeal was that the defendant improperly included the trust assets in the calculation of the applicant's eligibility although the applicant was incapable of revoking the trust to access the assets. At the February 10, 2021 administrative hearing, Mendoza testified and submitted an affidavit, the substance of which was that the applicant was not competent to revoke the trust because he lacked the mental capacity to transact business beginning in 2013 and continuing thereafter. The hearing officer stated that "[t]he appellant and counsel did not provide any medical evidence of a dementia diagnosis or any third-party testimony or statements that support these claims. Further, these reports were not provided to the [defendant] during the application process although an extension was granted by the [defendant] to dispute the classification of the trust's accessibility. The [defendant] made the correct determination of the trust's accessibility based on the information that was provided to [it]." The hearing officer concluded that she "did not find [Mendoza's] affidavit sufficient verification to make a determination of [the applicant's] mental capacity . . . ." The hearing officer instead found that, because the value of the Old Lyme property alone put the Romanellis over the asset limit, the defendant properly denied the applicant Medicaid benefits.

The plaintiff filed an administrative appeal, pursuant to General Statutes § 4-183, in the Superior Court from the defendant's denial of Medicaid benefits. The court determined that the hearing officer did not err in finding

that Mendoza's testimony and affidavit failed to prove that the applicant lacked the mental capacity to revoke the trust and access the Old Lyme property. The court dismissed the appeal. This appeal followed.

I

The plaintiff first claims that, according to General Statutes § 17b-261 (c), the Old Lyme property was not "actually available" for purposes of calculating Medicaid eligibility because the applicant was not legally capable of revoking the trust. We are not persuaded.

"[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither [the appellate] court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Miller* v. *Dept. of Agriculture*, 168 Conn. App. 255, 265–66, 145 A.3d 393, cert. denied, 323 Conn. 936, 151 A.3d 386 (2016); see also General Statutes § 4-183 (j).

"The [Medicaid] program, which was established in 1965 as Title XIX of the Social Security Act and is codified at 42 U.S.C. § 1396 et seq. ([M]edicaid act), is a joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of, among other things, medically necessary nursing facility care. . . . The federal government shares the costs of [M]edicaid with those states that elect to participate in the program, and, in

return, the states are required to comply with requirements imposed by the [M]edicaid act and by the [S]ecretary of the Department of Health and Human Services. . . . Specifically, participating states are required to develop a plan . . . containing reasonable standards . . . for determining eligibility for and the extent of medical assistance to be provided. . . . Connecticut has elected to participate in the [M]edicaid program and has assigned to the [defendant] the task of administering the program. . . . Pursuant to General Statutes §§ 17b-262 and 17b-10, the [defendant] has developed Connecticut's state [M]edicaid plan and has promulgated regulations that govern its administration. . . . The [M]edicaid act, furthermore, requires participating states to set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under the program." (Citations omitted; internal quotation marks omitted.) *Pikula* v. *Dept. of Social Services*, 321 Conn. 259, 264–66, 138 A.3d 212 (2016).

Section 17b-261 (c) provides in relevant part that, "[f]or the purposes of determining eligibility for the Medicaid program, an available asset is one that is actually available to the applicant or one that the applicant has the legal right, authority or power to obtain or to have applied for the applicant's general or medical support. . . ." Section 17b-198-8 (*l*) (2) of the Regulations of Connecticut State Agencies provides in relevant part that "[t]he corpus of a trust shall be treated as a counted asset of a person . . . if the terms of the trust permit such person to revoke the trust and receive the corpus of the trust upon revocation."

Section 11 of the trust provides that the Romanellis retained during their lifetime "[t]he right to withdraw all or any part of the trust property and to revoke this agreement entirely and the trust hereby created" and further provides that this right to withdraw could be

exercised "[i]f both grantors are alive and competent, severally, only with respect to each grantor's separate share." Section 11 further provides that, "[i]n the event of the incapacity of one or both of the grantors, this trust may not be revoked by any legal or personal representative of an incapable grantor." Accordingly, the trust would be irrevocable, and the Old Lyme property would not be available as an asset for determining Medicaid eligibility if the applicant were incapacitated at the time of the filing of the application.

At the administrative hearing, Mendoza testified that she was the Romanellis' attorney, that she visited the Romanellis once or twice each year to handle issues such as taxes, and that, by 2013, when the applicant was approximately ninety-two years old, he "was not capable of any financial dealings," including revoking the trust. She further stated that the applicant was in a long-term care facility "because he is completely incapable . . . ." In her affidavit, Mendoza stated that the applicant had dementia after 2012 and that, by 2013, he was not competent to revoke the trust. The hearing officer concluded that the defendant correctly had denied the applicant's application because the value of the Old Lyme property had placed him over the asset limit allowable for Medicaid coverage for long-term care. The hearing officer reasoned that no medical evidence of a dementia diagnosis, third-party testimony, or statements in support of the applicant's incapacity was presented at the hearing and that Mendoza's affidavit did not provide "sufficient verification to make a determination of his mental capacity . . . ." The hearing officer further noted that the defendant was not made aware of any questions regarding the applicant's mental capacity during the application process and that the defendant made the correct determination of the trust's accessibility on the basis of the information that had been provided.

The court noted that the hearing officer, who was in the best position to evaluate and weigh the evidence, found the evidence offered at the administrative hearing concerning the applicant's incapacity to be insufficient.[2] The court stated: "The affidavit was from the applicant's personal attorney, who was representing the plaintiff at the hearing and who was obviously advocating the position most favorable to the applicant, as any attorney would. While it was not absolutely required that medical evidence be submitted concerning the applicant's mental capacity, such medical evidence would have been more compelling. Further, while the attorney affidavit and testimony was some evidence, the evidence was not impartial and one could, but was not required to, reasonably question whether an attorney had the necessary skill and qualification to make such an assessment on her own. Accordingly, although the hearing officer could have credited the affidavit, it was not error for the hearing officer to find that the affidavit and corresponding testimony alone were insufficient evidence to conclude that the applicant was mentally incapacitated. . . . In this regard, it must be noted that, throughout the process, the plaintiff bore the burden of proof to prove eligibility for the Medicaid benefits and any alleged incapacity." (Footnote omitted.) The court additionally determined that "not only was the attorney

---

[2] The court explained that "[t]he plaintiff has taken the position that the applicant did not have the mental capacity to terminate the trust and remove his share of the assets. If the applicant had the mental capacity to terminate the trust and remove the trust assets, then the trust assets were available resources. Further, the applicant had the burden to prove his eligibility for Medicaid benefits, the inaccessibility of any asset, and any alleged incapacity. The sole evidence concerning the applicant's mental capacity was an affidavit and testimony from his personal lawyer expressing her personal opinion that the applicant was mentally incapacitated. In the administrative hearing . . . the hearing officer accepted the affidavit as evidence, considered it and determined that it was insufficient evidence for her to conclude that the applicant was mentally incapacitated." (Footnote omitted.) In other words, the hearing officer concluded that the plaintiff failed to prove at the hearing the applicant's lack of mental capacity to revoke the trust.

the applicant's longtime attorney, she was now actively representing the applicant's wife and the estate and was expressing an opinion that would have an impact on the effectiveness of a trust that this attorney put in place for the applicant and the applicant's spouse."

On appeal, the plaintiff contends that the defendant improperly included the Old Lyme property in the calculation of available assets for purposes of determining the applicant's Medicaid eligibility because the evidence presented at the administrative hearing, specifically, Mendoza's affidavit and testimony, established that the applicant lacked the capacity to revoke the trust.

In particular, the plaintiff argues that the hearing officer erroneously determined that medical testimony is an absolute requirement to prove mental incapacity. In support of her argument, the plaintiff highlights the final sentence in the following quotation from the decision of the hearing officer, which was made in the context of distinguishing *Bassford* v. *Bassford*, Superior Court, judicial district of Middlesex, Docket No. CV-15-6012903-S (March 24, 2016) (reprinted at 180 Conn. App. 335, 183 A.3d 686 (2018)), aff'd, 180 Conn. App. 331, 183 A.3d 680 (2018): "In *Bassford*, the decedent had been involuntarily conserved. The [P]robate [C]ourt determined his capacity. Also, the court used the decedent's medical records and testimony of his personal attorney and spouse in their determination of his capacity. In this case, these were not provided for the record and the burden of that proof falls to the applicant. *A determination of capacity cannot be made without this documentation.*" (Emphasis added.) It is clear, however, from the entire decision in the present case, that the hearing officer considered Mendoza's testimony and affidavit and concluded that they did not provide sufficient evidence to prove that the applicant was incompetent. In so concluding, the hearing officer

stated that Mendoza's opinion as to the applicant's mental incapacity alone was not sufficient and that the plaintiff did not provide any additional supporting evidence, such as medical evidence "or any third-party testimony or statements that support" the applicant's alleged mental incapacity.

The hearing officer determined that Mendoza's affidavit and testimony were not sufficient to establish incapacity, and we cannot retry the case or substitute our own judgment for that of the hearing officer with respect to the weight of the evidence. See, e.g., *Northwest Hills Chrysler Jeep, LLC* v. *Dept. of Motor Vehicles*, 201 Conn. App. 128, 147–48, 241 A.3d 733 (2020); see also General Statutes § 4-183 (j). Rather, it is within the province of the hearing officer to weigh evidence and reach factual conclusions. See, e.g., *Lawrence* v. *Kozlowski*, 171 Conn. 705, 708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977).

For the foregoing reasons, we conclude that the court appropriately determined that the hearing officer, in reaching the decision that the Old Lyme property was an available asset for purposes of calculating the applicant's Medicaid eligibility, did not act unreasonably, arbitrarily, illegally, or in abuse of her discretion and that the decision is supported by substantial evidence.

II

The plaintiff next claims that the defendant violated due process by failing to provide, in its written request for verification of ownership of the Old Lyme property, notice of the separate issue that the revocability of the trust was at issue in determining the applicant's eligibility for Medicaid benefits. We are not persuaded.

The following facts, as found by the hearing officer, are relevant. On September 23, 2020, the defendant sent

a notice,[3] indicating that it had determined that the total available assets owned by the applicant and the plaintiff were $440,419.80, and that Medicaid benefits could not begin until that amount was reduced to $128,020, which number reflected the community spouse protected amount of $126,420 plus the protected amount of $1600 for the applicant. On September 29, 2020, Karen Thorpe, a social worker and the applicant's authorized representative who signed the application for Medicaid benefits along with the applicant, informed Nick Romanelli via email that the defendant was considering the Old Lyme property as an available asset to be used in calculating the applicant's eligibility for Medicaid benefits.[4] On September 30, 2020, the defendant sent Thorpe a written request, entitled "We Need Verification from You" (request), which stated in part "RE: Non Home property in Old Lyme CT-the [defendant] has determined that this property is owned by [the trust]. If you do not agree with this, please provide verification of ownership."[5]

---

[3] The notice, which is in the return of record, indicates that it was sent to the plaintiff, with a copy to Karen Thorpe, the applicant's authorized representative for purposes of the Medicaid application. The hearing officer identifies the applicant's son, Nick Romanelli, his father having died, as the appellant.

[4] In an email, which is contained in the record, Thorpe informed Nick Romanelli that the defendant's legal department had determined that, because the Old Lyme property is in a revocable trust, it is treated as being owned by the Romanellis and, thus, will be counted as an available asset in determining the applicant's Medicaid eligibility, which will result in the defendant denying the applicant's application.

[5] The "hearing summary" of the proceedings before the hearing officer, which is dated February 8, 2021, contains the following relevant facts. The authorized representative for the applicant with respect to his Medicaid application was Thorpe. Neither Mendoza nor Nick Romanelli was an authorized representative and, therefore, no information was able to be shared with them directly during the application process, but information could be obtained from them. Thorpe was the sole provider of information to the defendant during the application process. The defendant sent the spousal assets determination to Thorpe and discussed that determination with her. No additional information was provided to the defendant by the due date. Thorpe worked with Nick Romanelli. Mendoza was not involved and did not provide any information to the defendant during the application process.

The request further stated that the due date for the applicant's response was October 11, 2020. Neither Thorpe nor Nick Romanelli raised any issue or provided any information in response to the request that either disputed the ownership of the Old Lyme property or argued that the applicant's lack of mental competency was a defense to the inclusion of the Old Lyme property in the defendant's determination of the applicant's Medicaid eligibility. On October 14, 2020, the defendant denied the applicant's Medicaid application for exceeding the asset limit.

The plaintiff argues that the "confusing verbiage" of the request did not indicate that the trust property was to be included as an available asset for determining Medicaid eligibility because the defendant concluded that the trust was revocable. She further contends that, "[w]hen an agency omits essential information in any notice, this directly implicates the fundamental tenets of due process."

"A fundamental principle of due process is that each party has the right to receive notice of a hearing, and the opportunity to be heard at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Mikucka* v. *St. Lucian's Residence, Inc.*, 183 Conn. App. 147, 163, 191 A.3d 1083 (2018). Regarding notice of an agency's determination as to Medicaid eligibility, the Code of Federal Regulations provides in relevant part that "the agency must provide all applicants and beneficiaries with timely and adequate written notice of any decision affecting their eligibility, including an approval, denial, termination or suspension of eligibility, or a denial or change in benefits and services. . . ." 42 C.F.R. § 435.917 (a) (2019). The notice of the

No claim of the applicant's alleged incompetency as a basis for his lack of right to access either of the properties was made during the application process, but that omission did not deprive the plaintiff of the right to raise that issue in a hearing.

defendant's decision to deny the applicant benefits was sent to the plaintiff via letter dated October 14, 2020.

The September 30, 2020 written request to Thorpe explained that the defendant "must have proof of certain information so that we can make a decision about your application," provided a deadline for providing that information to the defendant, and further stated that, if no information was received by the due date, then "the case will be processed based on the information received." Therefore, according to the clear language of the request, the application was still pending and the defendant had requested additional information *in order to* make a decision regarding the applicant's Medicaid eligibility after seeking information from the applicant's authorized representative concerning the trust's ownership of the Old Lyme property.[6] Not only does the request for information about property ownership not qualify under 42 C.F.R. § 435.917 (a) as a decision affecting an applicant's eligibility, but any argument that the defendant was required to request information from the plaintiff regarding the applicant's mental capacity fails because, "[a]t all times, the burden of establishing eligibility is on the applicant." *Harrison* v. *Commissioner of Income Maintenance*, 204 Conn.

---

[6] The plaintiff also argues that there was a lack of legal notice "of the legal counsel's decision of September 1, 2020." The record contains an email chain dated September 1, 2020, between the eligibility services worker and legal counsel for the defendant regarding the ownership of the Old Lyme property. This internal email contained preliminary discussions of eligibility and did not constitute a decision affecting eligibility for which the due process requirement of notice attaches. See 42 C.F.R. § 435.917 (a) (2019). Additionally, the defendant provided notice in October, 2020, of its decision to deny the applicant Medicaid benefits.

The plaintiff further argues that "there was no opportunity to know that the [defendant] would only accept medical evidence to support a claim of incapacity and irrevocability because this position also was never communicated by the [defendant's] case worker or legal counsel." As we detail in part I of this opinion, the hearing officer did not determine that only medical evidence could prove incapacity, and, thus, we reject this argument.

672, 679, 529 A.2d 188 (1987). Moreover, when the defendant made the decision to deny Medicaid benefits, notice of that decision was provided on October 14, 2020.

Additionally, on December 8, 2020, Mendoza, as attorney for the applicant's estate, wrote to the defendant and requested a hearing on the denial of the application "to present our argument that these assets [including the Old Lyme property] should have been excluded from the determination." That hearing was held, and, although the defense of incompetency had not been previously asserted,[7] the plaintiff received a full hearing on that issue. Accordingly, we conclude that there was no due process violation.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The court noted that no challenge to the applicant's mental capacity was made during the application process and that "[i]t was only later, after [the defendant] had already denied the benefits and during the administrative hearing, that the applicant first attempted to challenge his capacity. During the application process, [the defendant] clearly provided the applicant with an opportunity to present all necessary evidence, ultimately advising the applicant that [the defendant] intended to deny his application based upon excess assets unless the applicant provided documentation to dispute [the defendant's] position. The applicant failed to timely dispute the [defendant's] position by attempting to challenge capacity during the application process."